# Norris, Appellant, *v.* Dalrymple.

*Boroughs—Deed—Boundaries—Location of street.*

The location of street monuments by a borough engineer cannot interfere with interior lines to which parties owning adjoining lots had claimed prior to such location and continued to claim for years afterwards. The borough might be able to force lot owners to surrender ground which had been previously fenced upon streets or alleys by making compensation therefor under legal proceedings, but this cannot in any way interfere with the lines between the property owners.

*Evidence—Competency of witness—Party dead—Ejectment.*

Where a grantor in a deed points out to the grantee the eastern boundary of the lot conveyed, and the grantee is placed in possession of the full amount of land intended to be conveyed, and thereafter the borough relocates certain streets, in consequence of which a person taking title from the grantee claimed that the western line of the lot was over two feet to the west of the line previously supposed to be the correct one, and brings an action of ejectment against the owner of the lot to the west, the grantee is a competent witness for the defendant, although the grantor is dead. In such a case the plaintiff does not claim adversely either to the grantor or the grantee, but under them. Reiter v. McJunkin, 194 Pa. 301, distinguished.

*Deed—Boundaries—Division line.*

Where a grantor of lots points out to the grantee a line which he designates as the true line between his lots and those of other parties, the grantee and those claiming under him are bound by that line, at least until it is shown by an adverse claim to be erroneous.

Argued May 22, 1901. Appeal, No. 98, April T., 1901, by plaintiff, from judgment of C. P. Warren Co., Dec. T., 1898, No. 57, on verdict for defendants in case of W. C. Norris v. Phœbe A. Dalrymple and A. S. Dalrymple. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Ejectment for a strip of land two and seven tenths feet wide in the borough of Warren.

The facts appear by the opinion of the Superior Court.

Under objection and exception A. S. Dalrymple was permitted to testify as to the boundary line pointed out to him by Stephen Carver. [1]

Plaintiff's points were as follows :

3. If Carver and Dalrymple in locating the division line between them at the time Dalrymple purchased from Carver, by mutual mistake took a line two and seven tenths feet east of the east line of lots Nos. 104 and 105 as the true east line of the land so purchased, when in fact the true east line of said lots, and the true east line of the land so purchased was not as located by them, but was two and seven tenths feet further west, then such mistake in locating the division line was not binding upon the parties, but is subject to correction in accordance with the actual true location of the eastern boundary of the land described in the deeds given in evidence. *Answer :* We answer this by saying that if Carver at the time he sold the land to A. S. Dalrymple, and made a deed to him, went upon the ground, and pointed out the southeast corner of lot No. 105 on the ground to him, thus locating the boundaries named in his deed, he and his grantees are bound by it, and that location is binding upon the parties to this suit. [3]

4. The plaintiff being the owner of the land purchased from Carver by A. S. Dalrymple, is entitled to all the land called for in said deed, unless the defendant establishes, by clear, precise and indubitable proof, that through fraud or mistake, more land was called for in said deed than was intended. *Answer :* This is affirmed, but we call your attention to the claims of the respective parties. If the line is located where Mr. Dalrymple testifies that Mr. Carver located it, and pointed it out to him, then the plaintiff in this case gets all the land he is entitled to, namely sixty feet, fronting on Fifth street. The only difference is that his eastern line is two and seven tenths feet farther east than is shown on the map, and that he now claims. [4]

5. If the jury find that there was no fraud or mistake in the quantity of land called for in the Carver deed, but only a mistake as to the location of the same on the ground, then in such case the true location would govern, and the plaintiff is entitled to recover the land in dispute provided it is included in the land called for in said deed. *Answer :* We answer this in the affirmative, if Mr. Carver did make a mistake. But we say to you, as we have said in the general charge, that if he pointed out to his grantee that line on the ground, and that line was pointed out to Dalrymple on the ground, he thus located the line of

his deed, and he is bound by it, and all those claiming under him. [5]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions. (3–5) Above instructions, quoting them.

*W. W. Wilbur*, of *Wilbur & Schnur* and *J. W. Dunkle*, for appellant.—Dalrymple was incompetent: Rouse v. McKean County Poor Dist., 169 Pa. 116 ; Reiter v. McJunkin, 8 Pa. Superior Ct. 165.

*D. I. Ball*, with him *O. C. Allen & Son*, for appellee, cited as to the competency of Dalrymple: Fearn v. West Jersey Ferry Co., 143 Pa. 122; Brown v. Carey, 149 Pa. 134; Van Horne v. Clark, 126 Pa. 411 ; Dickson v. McGraw Bros., 151 Pa. 98.

OPINION BY BEAVER, J., October 14, 1901:

Lot No. 105 in the borough of Warren fronts west upon Market street and south upon Fifth street. Lot No. 104 adjoins it on the north. Lot No. 106 fronts east on East street and south on Fifth street. Lot No. 103 adjoins it on the north. These lots have a common boundary at or about the center of the square formed by Market, Fifth, East and Sixth streets There is no public alley between them. In 1856 a fence, which had evidently been built for several years, and the east side of a barn erected upon the northeast corner of lot No. 104 constituted the north and south boundary between these lots. That fence continued until somewhat recently removed by the plaintiff and his neighbor to the east, not on account of any dispute as to where their common line was, but simply for convenience.

In February, 1874, Carver, who was the owner of lots Nos. 104 and 105, conveyed to Dalrymple sixty feet of the eastern end of lots Nos. 104 and 105 beginning on Fifth street at the southeast corner of lot No. 105 and extending sixty feet on Fifth street and about 104 feet deep, being the width of lots Nos. 104 and 105. At the time Carver put Dalrymple in possession he pointed out this fence as the eastern line of these lots.

In 1874 (presumably after the deed from Carver to Dalrym-

ple) the borough engineer of the borough of Warren relocated the streets and alleys of the borough. By that location which, so far as the testimony shows, was based upon no ancient monuments, the corners of Market and East streets were changed. The distance between these corners or the entire length of the square is 467.5 feet. That is one foot more than what is called for "in the official distance on the official map." By dividing the distance equally between these two corners the borough surveyor ascertains what he calls the true line between the rear of lots Nos. 104 and 105, and Nos. 103 and 106 respectively. It is reasonably certain that Pollock's location was made after the deed from Carver to Dalrymple, the latter having been made in February, 1874, and the monuments having been established by Pollock, presumably in the summer of that year. The present plaintiff has not been disturbed in his possession of the land beginning at the corner pointed out by Carver to Dalrymple, nor has any claim, so far as the testimony shows, ever been made to it. He claims, however, that beginning at the line midway between the corners of Market and East streets, as established by Pollock, the sixty feet purchased by Dalrymple from Carver, to which he has succeeded by virtue of a sheriff's sale of Dalrymple's interest, would extend two and seven tenths feet beyond the eastern line of a lot thirty feet front on Fifth street conveyed by Carver to Phœbe A. Dalrymple, the wife of A. S. Dalrymple, who is one of the defendants.

It is somewhat difficult to carry the locus in quo fully in mind, without a draft. None was furnished us and we have constructed one for our own use from the facts as recited and as practically agreed upon by both parties.

It requires no argument to show that the location of the street monuments by Pollock, the borough engineer, in 1874, could not interfere with interior lines to which the parties owning adjoining lots had claimed prior to that time and continued to claim for years afterwards. The borough might be able to force lot owners to surrender ground which had been previously fenced upon streets or alleys by making compensation therefor under legal proceedings, but this could not in any way interfere with the lines between property owners. It is perfectly clear that, if the eastern line of the lot pointed out by Carver

to Dalrymple, when the lot claimed by the plaintiff was sold, had been recognized many years as a division fence and continued to be so recognized, and the parties on both sides of it claimed that as their division fence, no change in the monuments fixing the width of streets, etc., would change that line. So far as we are able to discover from the evidence, the plaintiff still claims to it; but, calling the point equidistant between the street monuments along the line of the lots running east from Market street and west from East street as the true corner, he claims two and seven tenths feet west of the western line of the lot as pointed out by Carver to Dalrymple, asserting that, inasmuch as that is the true corner and the line running north from it the true line, it must be the line described in the deed.

The first assignment of error raises the question of the competency of A. S. Dalrymple as a witness, and Reiter v. McJunkin, 8 Pa. Superior Ct. 165, affirmed in 194 Pa. 301, is quoted as authority to show his incompetency, but the cases are entirely dissimilar. If the owners of lots Nos. 103 and 106 were claiming from the present plaintiff, the difference between the line as pointed out by Carver to Dalrymple and what is called the true line, the witness would undoubtedly have been incompetent and the case would have been similar to that of Reiter v. McJunkin, supra. But in this case the plaintiff does not claim adversely either to Carver or Dalrymple but under them and, so far as we can ascertain from the evidence, no one disputes the accuracy of the line, as pointed out by Carver to Dalrymple upon which the fence stood, except the plaintiff himself, who assumes a line made subsequently from data not then in existence as the true line. Dalrymple was a competent witness to show the location of this line. We think the testimony was properly admitted.

The plaintiff in his argument claims that " the remaining assignments of error raise substantially one question, as to the binding force of Carver's location of the starting point two and seven tenths feet on another man's land." By whom is it claimed that the starting point is two and seven tenths feet on another man's land? Not by any one claiming to own the land certainly but by the plaintiff himself who bases the claim upon a survey made subsequently to the conveyance by Carver to

Dalrymple, under which he claims. The adjoining owner makes no claim to this land, so far as is shown by the testimony. There is no evidence of a mistake at the time Carver pointed out the location of the line now disputed by the plaintiff. That line was apparently assented to and, so far as we know, is yet assented to by the owners of the lots facing on East street. So far as appears by the testimony, if the plaintiff recovered in this case, he would hold to the line as pointed out by Carver and secure two and seven tenths feet beyond the western line of the lot as then surveyed. The answers of the court to the plaintiff's points must be regarded from this standpoint and, taking them all together in connection with the general charge, we do not see any error in them. If the testimony had warranted the facts assumed in the third point of the plaintiff, it may be that it should have been answered in the affirmative, but the assumption that Carver and Dalrymple were locating a division line between them, as stated in the third point, is entirely at variance with the facts. They were not locating a division line between them, but Carver was simply pointing out the division line between lots Nos. 104 and 105 which he owned and lots Nos. 103 and 106 which were owned by other persons. The point is an entire misapprehension of the facts. The court nowhere says and nowhere means to say that, if Carver had pointed out as the eastern line of the lot a fence which was in fact not the line but was two and seven tenths feet on the land of the adjoining lot owners, that this mistake could not be rectified and the answer to the plaintiff's fifth point embodied in effect this proposition; but what the court does say, as we understand it, is that Carver, having pointed out that line as the true line between his lots and those lying east of him, Dalrymple and the present plaintiff who claims under him are bound by that line, at least until it is shown by an adverse claim to be erroneous, and this we think is correct.

Upon a careful consideration of the whole case, we can see no substantial error.

Judgment affirmed.